UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KEWANDA CAMPBELL, individually and
on behalf of J.C. her minor child, on behalf
of themselves individually and all others
similarly situated,

                            Plaintiffs,

       — against —

MBI ASSOCIATES, INC.,

                          Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

12-CV-989 (SLT)(CLP)

**TOWNES, United States District Judge:**

      Plaintiff Kewanda Campbell ("Ms. Campbell") brings this action on behalf of herself; her

son, J.C.; and others similarly situated, principally alleging that defendant MBI Associates, Inc.

("MBI"), violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. (the

"FDCPA"), and New York General Business Law ("GBL") §349 by (1) stating in form collection

letters that there would be a $5.00 processing fee for paying the debt by credit card, (2) sending

the two-year-old J.C. a dunning letter, and (3) communicating with Ms. Campbell after receiving

notice that she was represented by counsel. Plaintiffs and defendant now cross-move for

summary judgment. For the reasons set forth below, plaintiffs' motion for summary judgment is

granted with respect to the first and second causes of action, and defendant's motion for

summary judgment is granted with respect to the third cause of action.

## *BACKGROUND*

      Unless otherwise indicated, the following facts are not in dispute. During the second

quarter of 2011, Ms. Campbell allegedly owed money to The Methodist Hospital (the

"Hospital"), incurred in connection with medical services provided by that facility. First

Amended Complaint ("Amended Complaint"), ¶ 14; Answer to First Amended Class Action Complaint ("Amended Answer"), ¶ 14. Campbell admits that she obtained services at the Hospital on two occasions: in 2009, when she gave birth to J.C., and in November 2010, when she took J.C. to the Hospital for medical treatment. Affidavit of Campbell in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("Campbell Affidavit"), ¶¶ 5, 7. However, Ms. Campbell alleges that she "used [her] health insurance to pay" for both visits, *id.*, ¶¶ 6, 8, and does not believe that she owes any money to the Hospital. *Id.*, ¶ 38.

Sometime prior to April 27, 2011, the Hospital placed Ms. Campbell's account with MBI, a "debt collector" as defined by 15 U.S.C. § 1692a(6). Defendant's Statement of Undisputed Material Facts pursuant to Local Rule 56.1 ("Defendant's 56.1"), ¶¶ 3, 5; Plaintiffs' Local Rule 56.1(b) Counter-statement in Opposition to Defendant's Statement of Undisputed Facts ("Plaintiffs' 56.1"), ¶¶ 3, 5. Thereafter, MBI mailed Ms. Campbell a "form collection letter dated April 27, 2011" (hereafter, the "First Letter"), in an attempt to collect on behalf of the Hospital. Defendant's 56.1, ¶ 6; Plaintiffs' 56.1, ¶ 6. A redacted copy of this First Letter is attached as Exhibit 1 to the Amended Complaint and MBI has admitted, in its response to plaintiffs' requests for admissions, that this letter is "genuine." Declaration of Attorney Novlette R. Kidd in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("Kidd Declaration"), Ex. 3, Request No. 1.

The First Letter consists of a single page, with text on both sides. The front side is divided by a horizontal line into two sections. The top section contains a short letter, addressed

to Ms. Campbell, which asserts that she owes the Hospital money. The letter lists, *inter alia*, the date on which services were allegedly provided and the balance alleged to be due and owing.

The bottom section is a payment slip, meant to be detached and returned to MBI. In addition to providing information identifying Ms. Campbell's account and defendant's mailing address, this section provides a space in which to write the "Amount Enclosed" with the slip. The bottom section also invites Ms. Campbell to pay by credit card, stating that she can either "use [the] back of [the] form" or log onto MBI's website. However, the bottom section states: "There will be a $5.00 processing fee for all credit cards."

The back of the First Letter also has two sections, divided by a horizontal line. The top section is to be completed if the recipient has insurance, while the bottom is to be completed if the recipient wants to charge a credit card. The bottom section—like the bottom section of the front side—states: "There will be a $5.00 processing fee for all credit cards."

On June 6, 2011, MBI sent a similar letter to J.C. Amended Complaint, ¶ 31; Amended Answer, ¶ 31. Like the First Letter, that letter (hereafter, the "Second Letter") stated that Hospital records showed a balance was due. Amended Complaint, ¶ 32; Amended Answer, ¶ 32. It offered the recipient the option of paying by credit card and stated, "There will be a $5.00 processing fee for all credit cards." Amended Complaint, ¶ 38; Amended Answer, ¶ 38.

At some point after receiving the First Letter, Ms. Campbell apparently contacted Fagenson & Puglisi, a law firm. On January 27, 2011, one of the firm's attorneys, Concetta Puglisi, wrote defendant a letter on Ms. Campbell's behalf. Amended Complaint, ¶ 19; Amended Answer, ¶ 19. A redacted copy of this letter (hereafter, the "Puglisi Letter") is attached

3

as Exhibit 2 to the Amended Complaint and MBI has admitted, in its response to plaintiffs' requests for admissions, that this letter is "genuine." Kidd Declaration, Ex. 3, Request No. 3.

The Puglisi Letter contains three paragraphs. In the first, Puglisi informs MBI that Fagenson & Puglisi represents Ms. Campbell and that she "disputes the debt you are attempting to collect." In the second, Puglisi asks MBI to supply "documentation supporting your claim," and directs MBI not to contact Ms. Campbell directly. In the third, Puglisi invites MBI to contact her with any questions, but notes that Fagenson & Puglisi is not authorized to accept service of process on behalf of its clients.

On February 1, 2012, Dominick J. Salerno, a Vice President at MBI, wrote a letter addressed to Ms. Campbell. Amended Complaint, ¶ 23; Amended Answer, ¶ 23. A redacted copy of this letter (hereafter, the "Third Letter") is attached as Exhibit 3 to the Amended Complaint and MBI has admitted, in its response to plaintiffs' requests for admissions, that this letter is "genuine." Kidd Declaration, Ex. 3, Request No. 4. In the Third Letter, Salerno acknowledges receipt of a letter disputing "the charges and the validity of the debt." Salerno represents that MBI will obtain "the required information necessary to substantiate the bill" within the next 30 days, and will not send additional correspondence "until that time."

*The Instant Action*

In late February 2012, Fagenson & Puglisi commenced this action by filing a Class Action Complaint which named both Ms. Campbell and J.C. as defendants. That pleading, which provided J.C.'s full name in the caption, did not mention that J.C. was a minor and contained no allegations relating to the Puglisi Letter or the Third Letter. Rather, the complaint not only focused solely on the First Letter and Second Letter, but focused entirely on that portion

4

of the letters which stated that there would be a $5.00 processing fee for credit card payments. The first cause of action alleged that this language violated various provisions of the FDCPA —namely, 15 U.S.C. §§ 1692e, 1692e(2)(B), 1692e(5), 1692e(10) and 1692f(1)—while the second cause of action alleged that it violated GBL § 349.

At some point following the commencement of the action but prior to July 11, 2013, Fagenson & Puglisi learned that J.C. was a minor. *See* Letter to Hon. Sandra J. Townes, U.S.D.J., from Novlette R. Kidd, Esq., dated July 12, 2013. Accordingly, on July 11, 2013, Fagenson & Puglisi filed the Amended Complaint, the caption of which stated that Ms. Campbell was suing "individually and on behalf of J.C. her minor child, on behalf of themselves individually and all others similarly situated." The Amended Complaint also added allegations relating to the Puglisi Letter and the Third Letter and added two new causes of action.

### A. The Amended Complaint

The first of the four causes of action alleged in the Amended Complaint is similar, but not identical to, the first cause of action in the original pleading. It alleges that the $5.00 processing fee mentioned in the First Letter and the Second Letter is charged and collected by MBI, not a third-party, and is not authorized by any agreement that Ms. Campbell signed with the Hospital. This cause of action principally alleges that the statement, "There will be a $5.00 processing fee for all credit cards," constitutes "an attempt to collect an amount, (including a fee, charge, or expense incidental to the principal obligation)," in violation of 15 U.S.C. § 1692f(1), Amended Complaint, ¶ 50, and "constitutes an unfair and unconscionable means used by defendant in its attempt to collect a debt, in violation of the FDCPA, including but not limited to § 1692f." Amended Complaint, ¶ 51. However, it also alleges that this statement violates 15 U.S.C.

5

§§ 1692e, 1692e(2)(B), 1692e(5), and 1692e(10).

The second cause of action relates to the Puglisi Letter. It principally alleges that this communication violated 15 U.S.C. § 1692c(a)(2), which prohibits a debt collector from communicating with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney with respect to such debt. Amended Complaint, ¶ 61. This cause of action also alleges that Puglisi Letter violated § 1692e(5) by implicitly threatening to communicate with Ms. Campbell directly again within 30 days, Amended Complaint, ¶ 63, and §§ 1692e and 1692e(10) by using "false, deceptive and misleading means ... in its attempt to collect the debt." Amended Complaint, ¶ 62.

The third cause of action relates solely to the Second Letter, and is brought on behalf of J.C. This cause of action principally alleges that the Second Letter improperly represented that J.C. owed a debt to the Hospital. *Id.*, ¶¶ 65-66. It also alleges that J.C., as a minor, is legally incapable of incurring a debt, and that any debt incurred by J.C. cannot be collected from him. *Id.*, ¶¶ 67-68. The third cause of action alleges that MBI's representation that J.C. owes a debt constitutes both "the false representation of the character and legal status a debt, in violation of ... § 1692e(2)(A)" and "a false, deceptive and misleading representation used in connection with the collection of a debt, in violation of ... §§ 1692e and 1692e(10)." Amended Complaint, ¶¶ 70-71.

The fourth and final cause of action alleges that MBI's "deceptive and misleading acts and practices" violated GBL § 349(a), which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service ...." Amended Complaint, ¶¶ 73, 82. This cause of action principally alleges that the First Letter and the Second Letter are "typical of the letters defendant mails to consumers within New York State" and

"contain the improper statement that there will be a $5.00 processing fee for all credit card payments." *Id.*, ¶¶ 76, 78. In addition, the fourth cause of action alleges that "defendant has a practice of not honoring legal representation letters from consumer's counsel and instead, communicating directly with consumers after receipt of such legal representation letters." *Id.*, ¶ 79.

With respect to the first three causes of action, the Amended Complaint demands actual and statutory damages, as well as attorney's fees and costs, as authorized by 15 U.S.C. § 1692k. With respect to the fourth cause of action, the pleading demands actual and statutory damages, as well as attorney's fees and costs, as authorized by GBL § 349(h). The Amended Complaint also seeks to certify a class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, which would consist of "[a]ll natural persons residing within the State of New York to whom defendant sent a letter in an attempt to collect a consumer debt on behalf of the Methodist Hospital, which letter contains a statement in sum or substance that there will be a $5.00 processing fee for all credit cards." Amended Complaint, ¶ 85.

### B. The Instant Motions

The parties now cross-move for summary judgment. Defendant moves for summary judgment with respect to all four causes of action, asserting that "the evidence adduced in this matter demonstrates that Plaintiffs cannot, as a matter of law, prevail on any of their causes of action ...." Brief in Support of MBI Associates, Inc.'s Motion for Summary Judgment ("Defendant's Memo"), p. 2. Plaintiffs move for summary judgment only with respect to the first three causes of action. With respect to the fourth cause of action, plaintiffs argue that "[t]here are genuine issues of material fact regarding liability under § 349 that would preclude judgment as a

matter of law for either side." Memorandum of Law in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs' Memo"), p. 23. The parties arguments and the responses thereto are discussed in detail in the discussion below.

Both defendant and plaintiffs have submitted two declarations, affidavits or affirmations in support of their respective motions. Plaintiffs have submitted both the Campbell Affidavit and the Kidd Declaration. The former document largely recounts the undisputed facts set forth above, while the latter attaches various exhibits, including some of defendant's answers to plaintiffs' Requests for Admissions (Ex. 3), a redacted copy of the front of the Second Letter (Ex. 4), and a page from "Defendant's Collection Notes of J.C.'s account" (Ex. 10).[1]

Exhibit 10 is a redacted version of a one-page printout, apparently prepared by MBI in connection with its efforts to collect the debt allegedly owed for J.C.'s November 2010 visit to the Hospital. In the upper left corner, the document lists two names: J.C., next to the word "Name;" and Kewanda Campbell, next to the word "Name2." A few lines below the names is an entry which reads: "DOB 02-03-09." A few lines beneath the "DOB" entry, the document names the "patient" as J.C. Near the bottom of the page is a line which reads: "PT F CLASS: Self-pay outpatient." The form also contains information relating to Ms. Campbell, including the name and address of her employer, but Ms. Campbell is repeatedly referred to as a "guarantor."

---

[1] Although referenced in the Kidd Declaration, Exhibit 10 was not filed with that document. Rather, it was separately filed under seal, together with a letter requesting leave to file it under seal and noting that defendant does not oppose the request. *See* Docket Entry 32. That request was granted on March 24, 2015, and the exhibit is deemed filed with the Kidd Declaration.

Defendant has also submitted two affidavits or affirmations: the Affirmation of Christian Browne, Esq., an attorney who formerly represented MBI in this action (the "Browne Affirmation"), and the Affidavit of Norman Alpren, MBI's president (the "Alpren Affidavit"). The former attaches five exhibits, including a redacted copy of the front of the Second Letter (Ex. B), and a 12-page document identified as an "MBI computer printout of collection notes and records" (Ex. C). The fifth page of Exhibit C appears to be an unredacted copy of the same document which is attached to the Kidd Declaration as Exhibit 10.[2]

The Alpren Affidavit provides details relating to the $5.00 processing fee and the sending of the Third Letter. With respect to the processing fee, Alpren states that MBI has long offered consumers the option of paying their debts by credit card. Alpren Affidavit, ¶ 2. However, according to Alpren, MBI has never promoted the use of credit cards over any other means of payment. *Id.* In addition, "MBI always provided several payment methods" that do not involve processing fees, including payment by check or money order, payment by cash at MBI's office, and payment directly to the creditor. *Id.*, ¶ 3.

MBI uses a "credit card processor, Cardworks ... to process all credit card transactions" involving cards other than American Express, which "processes directly with MBI." *Id.*, ¶ 4. Both Cardworks and American Express charge MBI a fee for processing these transactions. *Id.* These "processing fees" are deducted from the amount Cardworks or American Express collects on MBI's behalf before the funds are deposited in MBI's account. *Id.*, ¶ 5.

---

[2]Exhibit C was not filed with the Browne Affirmation, but was separately filed under seal with a letter requesting that it be filed under seal. *See* Docket Entry 29. That application was granted on March 24, 2015, and the exhibit is deemed filed with the Browne Affirmation.

Ever since it first began accepting credit card payments, MBI has charged consumers a $5.00 fee "to offset some of the loss that MBI incurs as a result of the processing fees imposed on it" by Cardworks and American Express. *Id.*, ¶ 4. Alpren denies that MBI implemented the $5.00 fee "to increase [its] profit margin," *id.*, asserting that "[i]n practice, the cost to MBI for accepting payments by credit card usually exceeded $5.00." *Id.*, ¶ 6. The Alpren Affidavit also attaches records from Cardworks and American Express which purportedly show that "in 2012, it cost MBI more to accept payments by credit card than it received back from the Processing Fee." *Id.*, ¶ 7. However, Alpren admits that the "fee amounts imposed on MBI by Cardworks and American Express vary according to the kind of credit card a consumer charges and the consumer's contract terms with his credit card company." *Id.*, ¶ 5. Alpren also notes that MBI has often waived the $5.00 fee at the request of consumers who wished to pay by credit card and "stopped imposing the processing fee" altogether in November 2012. *Id.*, ¶ 6. Alpren states that MBI abandoned the processing fee "[a]s a result of lawsuits," and notes that, "without the fee, MBI's losses on credit card transactions obviously increased." *Id.*

With respect to the Third Letter, Alpren states that MBI has a policy of sending "confirmation letters" to debtors who inform MBI that they dispute the validity of a debt. *Id.*, ¶ 9. Those confirmation letters acknowledge the dispute and inform the debtor "that MBI will cease communication until it gathers more information to substantiate the bill." *Id.* MBI also "has a policy of ceasing communication with a debtor immediately once it is notified that the debtor is represented by counsel." *Id.*, ¶ 8. MBI effectuates this policy by updating the debtor's contact information in its computer system once it is notified that a debtor is represented. *Id.*

Alpren concedes that the Third Letter was "mistakenly sent" to Ms. Campbell after MBI's receipt of the Puglisi Letter. *Id.*, ¶ 10. However, Alpren represents that the Third Letter was only "intended to inform the debtor of receipt of the prior communication," not "to coerce Ms. Campbell into foregoing ... legal representation." *Id.* Alpren states that MBI had no further contact with plaintiff after the Third Letter. *Id.*

## DISCUSSION

### I. The Summary Judgment Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may [, *inter alia* ] ... consider the fact undisputed for purposes of the motion [or] ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## II. The FDCPA

Congress enacted the FDCPA in 1977 to eliminate "abusive practices in the debt collection industry, and ... to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" *Jacobson v. Healthcare Fin. Svcs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (quoting 15 U.S.C. § 1692(e)). "These purposes inform the FDCPA's many provisions," *id.*, which regulate interactions between "debt collectors" and "consumers," as those terms are defined in 15 U.S.C. § 1692a. The parties agree that MBI is a "debt collector" as defined by 15 U.S.C. § 1692a(6), Amended Complaint, ¶ 9, Amended Answer, ¶ 9, and that Ms. Campbell is a "consumer" as defined by the FDCPA. Defendant's 56.1, ¶ 1; Plaintiffs' 56.1, ¶ 1.

The Amended Complaint in this case alleges violations of three FDCPA provisions: §§ 1692c, 1692e and 1692f. Section 1692c regulates communications in connection with debt collection and provides, *inter alia*:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt--
>
> \*   \*   \*
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer ....

15 U.S.C. § 1692c(a). For purposes of § 1692c, "the term 'consumer' includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator." 15 U.S.C. § 1692c(d).

The other two provisions—§§ 1692e and 1692f—both begin with a general proscription. Section 1692e bars a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," while § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." Both provisions then list examples of conduct which violates of the general proscription.

Plaintiffs' Amended Complaint alleges that defendant not only violated the general proscriptions set forth in §§ 1692e and 1692f, but committed conduct expressly prohibited by four of the examples. First, plaintiffs allege violations of § 1692e(2), which prohibits "[t]he false representation of ... (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." Plaintiffs also allege violations of § 1692e(5), which prohibits a debtor collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken," and § 1692e(10), which bars "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Finally, plaintiffs allege a violation of § 1692f(1), which bars "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

In the Second Circuit, "the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Jacobson*, 516 F.3d at 90 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). "The hypothetical least sophisticated consumer does not have the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer, but is neither irrational

13

nor a dolt." *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (internal quotations and citation omitted). This objective standard serves a "dual purpose: it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon*, 988 F.2d at 1320.

A consumer does not need to show intentional conduct on the part of the debt collector in order to recover under the FDCPA. *Ellis*, 591 F.3d at 135. The FDCPA "is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages." *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 63 (2d Cir. 1993) (internal citation omitted).

### III. The Causes of Action Alleged by Plaintiffs

#### A. The First Cause of Action

In their first cause of action, plaintiffs principally argue that defendant violated 15 U.S.C. §§ 1692f and 1692f(1) by stating, in the First Letter and Second Letter, "There will be a $5.00 processing fee for all credit cards." As noted above, § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." Section 1692f(1) dictates that "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of § 1692f.

"The Second Circuit has expressly applied § 1692f(1) to service charges collected to defray collection costs." *Quinteros v. MBI Associates, Inc.*, 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014) (citing *Tuttle v. Equifax Check*, 190 F.3d 9 (2d Cir. 1999)). In *Tuttle*, the Second Circuit

14

stated that § 1692f(1) permitted a debt collector to "impose a service charge if (i) the customer expressly agrees to the charge in the contract creating the debt or (ii) the charge is permitted by law." *Tuttle*, 190 F.3d at 13. Relying on the language of § 1692f(1) and the Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,108 (Fed. Trade Comm'n 1988), *Tuttle* laid out the circumstances under which a service charge is, or is not, permissible as follows:

> *If state law expressly permits service charges*, a service charge may be imposed even if the contract is silent on the matter;
>
> *If state law expressly prohibits service charges*, a service charge cannot be imposed even if the contract allows it;
>
> *If state law neither affirmatively permits nor expressly prohibits service charges*, a service charge can be imposed only if the customer expressly agrees to it in the contract.

190 F.3d at 13 (emphasis in original).

Relying on the second prong of this standard, plaintiffs assert that the processing fee is expressly prohibited both by the Rules of the City of New York, Title 6, § 5-77(e)(1) and GBL § 601(2). Plaintiffs' Memo, pp. 10-11. However, these two statutes are the local and state analogues of § 1692f. The former is a provision of the New York City Consumer Protection Law which, like § 1692f(1), prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Nothing in that statute addresses the question of whether a processing fee is permitted or prohibited by law.

GBL § 601, which was enacted in 1973, predates the FDCPA and does not track the language of § 1692f(1). Nonetheless, the statute is similar to § 1692f(1). It provides that "[n]o

15

principal creditor ... or his agent shall ... (2) [k]nowingly collect, attempt to collect, or assert a right to any collection fee, attorney's fee, court cost or expense unless such changes [*sic*] are justly due and legally chargeable against the debtor." The statute does not address the question of what expenses are "legally chargeable," much less prohibit credit card processing fees of the sort at issue here.[3]

While plaintiffs have not established that the processing fee is prohibited by state law, they do not rely solely on the second prong of the *Tuttle* standard. They also argue that, even if the $5.00 processing fee is not statutorily prohibited, it (1) is not affirmatively permitted by state law, and (2) is not contractually authorized. Plaintiffs point out that there is no factual dispute as to either of these two points. In its answer to the Amended Complaint, defendant admitted both that "the $5.00 processing fee charged by defendant is not permitted by any applicable law," Amended Complaint, ¶ 49, Amended Answer, ¶ 49, and that "the $5.00 processing fee charged by defendant is not expressly authorized by any agreement that plaintiff Campbell has with the hospital." Amended Complaint, ¶ 48, Amended Answer, ¶ 48. Relying on the third prong of the *Tuttle* standard, plaintiffs argue that the processing fee cannot be imposed, and that defendant violated §§ 1692f and 1692f(1) by stating that it would impose the fee.

Plaintiffs assert that there is "ample decisional law" supporting this argument. Plaintiffs' Memo, p. 11. Plaintiffs principally rely on *Quinteros v. MBI Associates, Inc., supra,* a case

---

[3]Plaintiffs' Memo mentions, but does not rely upon GBL § 518, a state law which makes it a misdemeanor for a "seller in any sales transaction" to "impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means." *See* Plaintiffs' Memo, p. 12. Plaintiffs note that this statute prohibits "a surcharge on credit card purchases," but also note that the statute was found to be unconstitutional in *Expressions Hair Design v. Schneiderman,* 975 F. Supp. 2d 430 (S.D.N.Y. 2013).

which not only involved the same defendant as this case, but involved a collection letter which, as here, stated that the defendant would charge a "$5.00 processing fee" for credit card payments. In that case, the defendant moved to dismiss the plaintiff's § 1692f(1) claim, principally arguing that the optional fee was "not a form of abuse against which the Act seeks to protect consumers." *Id.* at 437. Judge Kuntz rejected that argument, finding that it "cut[] against the plain language of § 1692f(1)." *Id.* at 438. Judge Kuntz read § 1692f(1) as plainly stating that "the collection of any amount incidental to the principal obligation, unless otherwise authorized by agreement between the parties or permitted by law," violated the FDCPA. *Id.* at 438. Since the defendant did "not contend that the processing fee [was] ... either expressly authorized by the contract underlying the debt or otherwise permitted by New York law," *id.* at 437, Judge Kuntz found that the plaintiff had "stated a claim under 15 U.S.C. § 1692f(1)." *Id.* at 439.

Although Plaintiffs' Memo focuses largely on *Quinteros*, it also mentions another case from this district: *Shami v. Nat'l Enter. Sys.*, No. 09-CV-722 (RRM)(VVP), 2010 WL 3824151 (E.D.N.Y. Sept. 23, 2010). In *Shami*, a consumer alleged that a collection letter violated § 1692f(1) by stating that unspecified "transaction fees" would be charged if the consumer used an automated phone system or the internet to pay the debt. The defendant moved for judgment on the pleadings with respect to this claim, arguing that § 1692f(1) was inapplicable because the phone and online methods of payment were optional. Relying in part on *Tuttle*, Judge Mauskopf rejected this argument. Noting that the defendant did not "assert that the transaction fees described in the Collection Letter were expressly authorized by the underlying agreement creating the debt" or that the fees were "otherwise permitted by New York law," *id.*, at *2, Judge Mauskopf concluded that the plaintiff had stated a claim under § 1692f(1).

In responding plaintiffs' argument in this case, defendant claims that plaintiffs have not cited to "on-point authority to support their claim under § 1692f(1)." Defendant's Reply Brief ("Defendant's Reply"), p. 8. However, defendant does not discuss *Quinteros*, except to distinguish it on the ground that it involved a motion to dismiss and to assert that it "provides no guidance here." *Id.* Defendant also argues that, while Judge Mauskopf declined to dismiss Shami's § 1692f(1) claim, she ultimately granted the defendant's motion for summary judgment in *Shami v. Nat'l Enter. Sys.*, 914 F. Supp. 2d 353 (E.D.N.Y. 2012). *Id.*

Defendant also argues that "[t]here are several factors courts have considered in evaluating processing fee statements in debt collection letters under the FDCPA when the processing fee is not expressly permitted by law and when the consumer has not expressly agreed to the charge in the contract creating the debt." Defendant's Reply, p. 2. First, citing to an unpublished Sixth Circuit opinion—*Lee v. Main Accounts, Inc.*, 125 F.3d 855 (6th Cir. 1997)— defendant claims that "courts look to whether the processing fee is optional or mandatory." Defendant's Reply, p. 2. Next, citing to the two *Shami* opinions and to *Lewis v. ACB Business Services, Inc.*, 911 F.Supp. 290 (S.D.Ohio 1996), *aff'd*, 135 F.3d 389 (6th Cir. 1998), defendant asserts that courts examine "whether the collection letter is designed to encourage payment by a particular method so the debtor thereby incurs the processing fee," and "whether the fee would be paid directly to the debt collector or an independent entity." Defendant's Reply, p. 2. Finally, citing to *Longo v. Law Offices of Gerald E. Moore & Associates, P.C.*, No. 04 C 5759, 2005 U.S. Dist. LEXIS 48493 (N.D. Ill. Feb. 3, 2005), defendant claims that courts consider "whether the processing fee is used as additional compensation or instead used to pass along the costs of third-party charges." Defendant's Reply, p. 2.

In addition to urging this Court to add a factor analysis to the *Tuttle* standard, defendant argues that "a party alleging a violation [of § 1692f(1)] must demonstrate, as a threshold matter, that the action giving rise to the claim falls within the [FDCPA's] intended ambit." Defendant's Memo, p. 9. Without citing to any cases whatsoever, the Defendant asserts that "before this Court even reaches the specific protections of § 1692f(1), it must first determine whether, as a matter of law, the Processing Fee Statement, offering an optional means of payment of a debt, can be construed as an abusive or unconscionable practice." *Id.*, p. 10. Defendant further argues that § 1692f(1) is "concerned with the 'unauthorized' collection of interest or charges that are 'incidental to the principal obligation,'" *id.*, and argues that a "credit card processing fee is not 'incidental' to the principal obligation." *Id.*, p. 10, 11.

None of defendant's arguments are persuasive. First, despite the fact that *Quinteros* involved a motion to dismiss, it involved the same defendant and the exact same claim raised by the first cause of action in this case. In denying the motion, Judge Kuntz held that Quinteros could make out a claim under § 1692f(1) by establishing that the processing fee was not expressly authorized by the contract underlying the debt or otherwise permitted by New York law. Judge Kuntz's decision is not controlling on this Court, but it is hard to argue that it is not "on-point."

Second, while Judge Mauskopf ultimately granted summary judgment to the defendants in *Shami*, that decision did not undercut her earlier ruling. Judge Mauskopf granted summary judgment on the ground that the processing fee was collected by a third party, rather than a debt collector. To be sure, Judge Mauskopf's opinion included a lengthy footnote which implied that a defendant could not violate § 1692f(1) by merely attempting to collect an unauthorized fee.

19

Specifically, Judge Mauskopf noted that § 1692f(1) "does not specify that it includes both collections of and attempts to collect unauthorized incidental fees," and cited to an unpublished Second Circuit decision—*Bank v. Cooper, Paroff, Cooper & Cook*, 356 F. App'x 509 (2d Cir. 2009) (summary order)—which "held that inclusion of a bad check fee that was $10 in excess of the authorized amount in a demand notice did not violate § 1692f(1) because it was never actually collected." *Shami*, 914 F. Supp. 2d at 357, n 2. However, Judge Mauskopf observed that a debt collector who attempted to collect an unauthorized fee could nonetheless be liable under § 1692f, noting that "the general provision of the statute .... includes attempts to collect," and that various district courts had found liability under the statute "where no actual collection appears to have taken place, instead focusing on the communication seeking payment itself." *Id.* (citing cases).

This Court also rejects defendant's suggestion that it is necessary to engage in some sort of factor analysis before finding liability under § 1692f in a case where "the processing fee is not expressly permitted by law and when the consumer has not expressly agreed to the charge in the contract creating the debt." Defendant's Reply, p. 2. Engaging in such factor analysis would appear contrary to the teachings of *Tuttle*, which is not cited in Defendant's Memo or Defendant's Reply. *Tuttle* expressly stated that unless state law affirmatively permits service charges, "a service charge can be imposed *only* if the customer expressly agrees to it in the contract." *Tuttle*, 190 F.3d at 13 (emphasis added). If this Court were to engage in the factor analysis suggested by defendant, it would be adding a level of analysis to the standard set forth in *Tuttle*.

With the exception of *Shami*, none of the cases which defendant cites in support of its proposed factor analysis are from this Circuit. Moreover, none of those cases endorse the factor analysis suggested by defendant. *Lee*—an unpublished Sixth Circuit opinion—upheld the district court's decision to grant the defendant summary judgment on a § 1692f(1) claim on the ground that the language in the debt collection letter, which advised that a Visa fee would be passed on to Lee, did not "amount to an 'attempt' to collect an extra fee under 15 U.S.C. § 1692f(1)." *Lee*, 125 F.3d 855 (Table), 1997 WL 618803 at *1. In *Lewis*, a magistrate judge in the Southern District of Ohio granted a Rule 50 motion for judgment as a matter of law on two § 1692f(1) claims, in part because "the uncontradicted evidence proved that any such fee, voluntarily chosen by the debtor if he or she chose this payment option, would not be paid to ACB or any entity it controlled and was a standard fee charged by the processor of the payment, an independent entity." *Lewis*, 911 F.Supp. at 293. *Longo*—an opinion authored by a district judge in the Northern District of Illinois—distinguished *Lee* and *Lewis*, then expressly adopted the *Tuttle* standard, stating "if state law neither affirmatively permits nor expressly prohibits collection of an additional amount, the amount can only be collected if the customer expressly agrees to it in the contract." *Longo*, 2005 U.S. Dist. LEXIS 48493, at *15 (citing *Tuttle*, 190 F.3d at 13).[4]

Defendant's assertion that § 1692f(1) is only "concerned with the 'unauthorized' collection of interest or charges that are 'incidental to the principal obligation'" is contrary to the

---

[4]Even if this Court were to engage in the analysis suggested in *Lee* and *Lewis*, the facts in those case are distinguishable from the facts in this case. The $5.00 processing fee here was not merely passed through to a third party, but "offset" processing fees which MBI incurred when it accepted payments by credit card. Alpren admits that the "fee amounts imposed on MBI by Cardworks and American Express vary according to the kind of credit card a consumer charges and the consumer's contract terms with his credit card company," Alpren Affidavit, ¶ 7. Accordingly, although "[i]n practice, the cost to MBI for accepting payments by credit card usually exceeded $5.00," *id.*, ¶ 6, MBI would realize a profit on at least some credit card transactions.

plain language of the statute. By its terms, § 1692f(1) prohibits the collection of *any* amount

which is not expressly authorized by the agreement creating the debt or permitted by law,

*including* any interest, fee, charge, or expense incidental to the principal obligation.

Accordingly, there is no need to consider whether the $5.00 processing fee is "incidental to the

principal obligation." The $5.00 is an "amount," and it is undisputed that the processing fee was

neither contractually authorized nor permitted by statute. Collection of this fee fits within the

scope of conduct described in § 1692f(1) and, by operation of that provision, would be deemed a

violation of § 1692f.

　　　　Defendant's assertion that a party alleging a violation of § 1692f(1) must also

demonstrate a violation of the general proscription set forth in the first sentence of § 1692f is also

contrary to the plain meaning of the statute. Section 1692f provides, in pertinent part:

> A debt collector may not use unfair or unconscionable means to
> collect or attempt to collect any debt. Without limiting the general
> application of the foregoing, the following conduct is a violation of
> this section:
>
> (1) The collection of any amount (including any interest, fee,
> charge, or expense incidental to the principal obligation) unless
> such amount is expressly authorized by the agreement creating the
> debt or permitted by law.

The statute then proceeds to list, in §§ 1692f(2)-(8), seven other types of conduct which are

deemed to constitute a violation of § 1692f.

　　　　As the Second Circuit has noted, subsections (1) through (8) are specific "examples of ...

conduct" that constitutes an "unfair or unconscionable means to collect or attempt to collect any

debt." *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 236 n. 2 (2d Cir. 1998). If a defendant's

conduct does not fit within of one those eight categories, it can nonetheless be actionable if it

violates the general proscription against the use of "unfair or unconscionable means to collect or attempt to collect any debt," set forth in the first sentence. *See, e.g., Bank*, 356 Fed. App'x at 511 (concluding that the defendant's conduct did not violate § 1692f(1), but proceeding to consider whether the conduct violated the general provision). However, if a court finds that a defendant's conduct fits within one of the eight categories, there is no need to also find a violation of the general proscription.

As noted on page 19, *supra*, there is some authority for the proposition that defendant may not have violated § 1692f(1) in this case because it never actually collected the $5.00 fee from Ms. Campbell. Section 1692f(1) does not expressly state that an *attempt* to collect unauthorized fees will constitute a violation of § 1692 and the Second Circuit has held, in an unpublished opinion, that § 1692f(1) prohibits only the *collection* of unauthorized fees. *Bank*, 356 Fed. App'x at 511. However, as Judge Mauskopf noted in her second opinion in *Shami*, several courts have found defendants liable under § 1692f for an attempt to collect an amount which is not contractually authorized or permitted by law. *Shami*, 914 F. Supp. 2d at 357, n 2. Accordingly, even if defendant's attempt to collect the $5.00 processing fee did not violate § 1692f(1), defendant is nonetheless liable under § 1692f.[5]

Even if defendant's conduct did not violate § 1692f, it would violate § 1692e(2)(B), which prohibits false representations regarding "compensation which may be lawfully received

---

[5]*Bank* is not to the contrary. In *Bank*, the plaintiff claimed that the defendant violated 15 U.S.C. § 1692f(1) by sending plaintiff a rent demand notice which mentioned a $35 bad check fee. Although the lease authorized only a $25 bad check fee, both parties recognized that the reference to a $35 fee in the rent demand notice was a "clerical error." 356 Fed. App'x at 511. The Second Circuit found that this "clerical error" was not an attempt to commit the conduct prohibited by § 1692f(1).

by any debt collector for the collection of a debt." As explained above, collection of the $5.00 processing fee would be prohibited by § 1692f(1). Therefore, a representation that the fee could be lawfully collected would violate § 1692e(2)(B). *See Shami*, 2010 WL 3824151, at *4 ("if it is determined that the Collection Letter violates § 1692f(1) by representing that the transaction fees are permissible, Defendant also would be in violation of § 1692e(2)."). Since the First Letter and the Second Letter both contained such a representation, the letters violated the FDCPA and plaintiffs are entitled to summary judgment on the first cause of action.

### B. The Second Cause of Action

In their second cause of action, plaintiffs principally allege that the Third Letter violated 15 U.S.C. § 1692c(a)(2). Amended Complaint, ¶ 61. Section 1692c(a) states, in relevant part:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt--
>       \*    \*    \*
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer ....

Although defendant admits that the Third Letter was "mistakenly sent" to Ms. Campbell after MBI's receipt of the Puglisi Letter, Alpren Affidavit, ¶ 10, defendant nonetheless seeks summary judgment with respect to this cause of action. First, defendant argues that the Third Letter does not fit within the scope of § 1692c(a) because it was "not a further attempt to collect the debt." Defendant's Memo, p. 14. Defendant notes that § 1692c(c)(1) permits a debt collector to "advise the consumer that the debt collector's further efforts are being terminated" even after

24

the consumer "notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer." *Id.* Defendant implies that the Third Letter falls within the scope of § 1692c(c)(1), and argues that "[t]he plain language of this letter shows that it was not sent for collection purposes." Defendant's Memo, p. 14. Defendant also argues, in response to Plaintiffs' Memo, that the violation of § 1692c(a) was unintentional and *de minimis.* Defendant's Reply, p. 9.

Defendant's arguments are unpersuasive. First, defendant's claim that the Third Letter did not constitute an "attempt to collect the debt" ignores the representations set forth in the letter itself. The letter states, below the signature line, "This is an attempt to collect a debt ...." Amended Complaint, Ex. 3.

Second, the question of whether the Third Letter was an "attempt to collect the debt" is irrelevant to the question of whether defendant violated § 1692c(a). That provision does not prohibit an "attempt to collect the debt" after the debt collector learns that the consumer is represented, but prohibits any communication "in connection with the collection of any debt." The FDCPA defines the term "communication" to mean "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

In this case, the Third Letter constitutes a communication because it conveyed "information regarding a debt" to Ms. Campbell. Moreover, although the letter did not request payment, the communication was unquestionably made in connection with defendant's efforts to collect a debt. The letter not only acknowledged receipt of a letter disputing "the charges and the validity of the debt," but also represented that defendant would obtain "the required information necessary to substantiate the bill" within 30 days.

Defendant's reliance on § 1692c(c)(1) tends to undercut the argument that the Third Letter is not a communication in connection with the collection of a debt. Section 1692c(c) provides, in pertinent part:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--

> (1) to advise the consumer that the debt collector's further efforts are being terminated ....

By implying that the Third Letter falls within this exception, defendant is implying that the Third Letter constituted a communication "with the consumer with respect to [a] debt." 15 U.S.C. § 1692c(c).

Defendant fails to cite to any cases for the proposition that it should be granted summary judgment on plaintiffs' second cause of action because the violation of § 1692c(a) was unintentional or *de minimis.* In fact, there is some authority for this proposition. In *Pearce v. Rapid Check Collection, Inc.*, 738 F.Supp. 334 (D.S.D. 1990), a district court found that the defendant was not liable under § 1692c(a) even though the undisputed evidence established that the defendant knew that the plaintiff was represented by an attorney, yet sent a letter directly to the plaintiff. While acknowledging that there was "a technical violation of the Act," the district court found that violation could be "characterized as *de minimis*" and was "not the type of conduct which the intent and purpose of the Act proscribes." *Id.* at 338.

At least two other district courts, however, have expressly refused to follow *Pearce*. *See, e.g., Muzuco v. ReSubmitIt, LLC*, No. 11-62628-Civ., 2012 WL 3242013 (S.D. Fl. Aug. 7, 2012); *Fisher v. Bernhardt and Strawser, PA*, No. 5:11-cv-00034-RLV-DSC, 2013 WL 3990744 (W.D.N.C. Aug. 2, 2013). In *Muzuco*, the defendant relied on *Pearce* in arguing that the plaintiff's § 1692c(b) claim should be dismissed because the plaintiff's violation of that statute was *de minimis*. The district court rejected this argument, finding that it was based on extrinsic factors which could not be considered because the meaning of § 1692c(b) was plain. *Fisher*, which was decided upon a motion to dismiss, followed *Mucuzo*. *Fisher*, 2013 WL 3990744, at *13.

No court in this Circuit has relied on *Pearce*, and this Court is unaware of any courts in this Circuit which have adopted its reasoning and dismissed claims on the ground that the violations of § 1692c were *de minimis*. However, the Court is aware of cases in which the Second Circuit and courts in this district have refused to award statutory damages for *de minimis* or technical violations of FDCPA. *See Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989) (determining that the nature of the defendant's noncompliance did not warrant statutory damages); *Fasten v. Zager*, 49 F. Supp. 2d 144, 150 (E.D.N.Y.1999) (holding the defendant's noncompliance was minor and plaintiff was not entitled to statutory damages). In light of these cases, the Court finds that defendant's argument regarding the unintentional or *de minimis* nature of the § 1692c(a) violation here to be relevant to the issue of damages, not to the issue of liability. *See Robin v. Miller and Steeno, P.C.*, No. 4:13CV2456 SNLJ, 2014 WL 3734318, at *3 (E.D.Mo. Jul. 29, 2014) (holding the argument that the plaintiff's § 1692c(a) violation was *de minimis* "not relevant to liability but instead, is an issue for damages."). The

27

instant motions for summary judgment relate solely to liability. Neither party has addressed the issue of damages.

For the reasons stated above, the Court grants summary judgment to plaintiffs on the second cause of action. Since neither party has briefed the issue, the Court declines address the question of whether defendant's violation of § 1692c(a) was *de minimis* and, if so, whether statutory damages should be available to plaintiffs for that violation. Those issues can be raised at a damages inquest, if such an inquest proves necessary.

### C. The Third Cause of Action

In their third cause of action, plaintiffs allege defendant knowingly dunned the wrong person when it sent the Second Letter to J.C. Plaintiffs claim that the records which defendant received from the hospital indicate that J.C. was born in 2009; that he resided at the same address as Ms. Campbell; and that Ms. Campbell was the "guarantor." Plaintiffs' Memo, p. 21. Plaintiffs further assert that if defendant had "taken the time to read the information containing in its debtor file it would have realized that the person who received treatment at the hospital was J.C., that J.C. was a minor child, and that Campbell was the responsible party ...." *Id.* Plaintiffs argue that defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10) by dunning a person who it knew was not responsible for the debt.

There is authority for the proposition that a debt collector violates 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10) by knowingly attempting to collect a debt from a non-debtor. *See Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011) (citing cases). However, there is no evidence that defendant knew J.C. was not responsible for the debt at the time it sent the Second Letter. Indeed, the evidence is to the contrary.

28

Preliminarily, this Court notes that it is not entirely clear what information defendant received from the Hospital before sending the Second Letter to J.C. Plaintiffs rely on Exhibit 10 to the Kidd Declaration—a redacted document consisting of a page from "Defendant's Collection Notes of J.C.'s account." However, this document appears to be created by MBI based on other documents, and is only one of dozen pages of "collection notes and records" maintained by MBI. *See* Browne Affirmation, Ex. C.

It is not necessary to determine whether defendant had all 12 pages, or just the one page attached to the Kidd Declaration, at the time it sent the Second Letter. There is nothing in any of the 12 pages to suggest that J.C. is not the debtor. Indeed, the document attached as Exhibit 10 to the Kidd Declaration identifies J.C. as the "patient" and appears to classify him as a "Self-pay Outpatient." While the document contains some information about Ms. Campbell, including her date of birth and employer, the document specifically refers to her as a "Guarantor." Guarantors are liable only after the principal debtor defaults on his or her obligation. *See, e.g., Group 1 Auto., Inc. v. Country Imported Car Corp.*, No. 07-CV-1454 (RRM)(WDW), 2012 WL 11955634, at *8 (E.D.N.Y. Aug. 15, 2012); (citing *Brewster Transit Mix Corp. v. McLean*, 169 A.D.2d 1036, 1037, 565 N.Y.S.2d 316, 317 (N.Y. App. Div. 3d Dept. 1991)). Accordingly, the documentation's characterization of Ms. Campbell as a "guarantor" implies that she is not the debtor.

The implication that J.C., not Ms. Campbell, is the debtor is not conclusively contradicted by anything else in the document. To be sure, the document contains a line which reads: "DOB 02-03-09," and lists only one address for both J.C. and Ms. Campbell. Even assuming that defendant knew that the "DOB" was J.C.'s birthday, there is nothing to indicate that J.C. is a

pediatric patient. Given the burgeoning population of centenarians in the United States, it was

entirely possible that J.C. was 102, not two.[6]

In sum, the evidence adduced by plaintiffs is insufficient to support the claim that

defendant knowingly dunned the wrong person when it sent the Second Letter to J.C. Moreover,

even though it is undisputed that J.C. is only two years old, plaintiffs concede that a minor may

be a "consumer" as defined in the FDCPA, Plaintiffs' Memo, pp. 21-22, and expressly disavow

any claim that defendant violated the FDCPA by dunning a minor. Plaintiffs' Memorandum of

Law in Reply ("Plaintiffs' Reply"), p. 10. Accordingly, defendant's motion for summary

judgment with respect to the third cause of action is granted.

### D. The Fourth Cause of Action

In their fourth cause of action, plaintiffs allege that defendant violated GBL § 349 by

using a collection letter containing a reference to the $5.00 processing fee and by communicating

directly with represented consumers. GBL § 349 prohibits "[d]eceptive acts or practices in the

conduct of any business, trade or commerce or in the furnishing of any service in [New York]

state...." GBL § 349(a). "'Deceptive acts' are defined objectively [ ] as acts likely to mislead a

reasonable consumer acting reasonably under the circumstances." *Spagnola v. Chubb Corp.*, 574

F.3d 64, 74 (2d Cir. 2009) (quoting *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (brackets in

---

[6]In the 1990 census, 37,306 people in the United States identified themselves as over age 100, though the Census Bureau opined that the actual number might be slightly lower. Constance A. Orach & Victoria A. Velkoff, U.S. Bureau of the Census, Current Populations Reports, Series P23-1999V, *Centenarians in the United States*, p. 1 (U.S. Gov't Printing Office, Washington DC 1999). By 2009, there were approximately 75,000 centenarians in the Untied States, and their numbers were expected to increase to 600,000 by mid-century. Associated Press, *Centenarians are the Fastest-Growing Age Segment: Number of 100-year-old to Hit 6 Million by 2050*, N.Y. Daily News, July 21, 2009 (available at http://www.nydailynews.com/life-style/ centenarians-fastest-growing-age-segment-number-100-year-olds-hit-6-million-2050-article-1.400828).

*Spagnola*). "'Deceptive practices' are 'acts which are dishonest or misleading in a material respect.'" *Id.* (quoting *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 258 (S.D.N.Y. 1995). However, "a deceptive practice 'need not reach the level of common-law fraud to be actionable under section 349.'" *Boule*, 328 F.3d at 94 (quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892 (2000).

To establish a violation of GBL § 349, a plaintiff "must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman*, 95 N.Y.2d at 29, 709 N.Y.S.2d at 895). In order to prove the first element, a plaintiff must show that the challenged act or practice had "a broader impact on consumers at large." *Id.* (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532 (1995)). "Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute ...." *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25, 623 N.Y.S.2d at 532.

In moving for summary judgment on this cause of action, defendant focuses on the first and second elements. First, defendant argues that the processing fee was "unambiguously disclosed" in the form collection letter and that the disclosure is "clear on its face" and "not misleading to a reasonable consumer." Defendant's Memo, p. 18. Second, defendant argues that "[t]here is ... no evidence to support Plaintiffs' claim that Defendant has a practice of refusing to honor legal representation letters from consumers' counsel." *Id.* Defendant does not mention the third element until Defendant's Reply, in which it asserts that the Amended Complaint "lacks

any allegations as to how consumers were harmed in any material way by MBI's optional and voluntary credit card Processing Fee Statement." Defendant's Reply, pp. 9-10.

Defendant's first argument misapprehends the gist of plaintiffs' argument. As explained in Plaintiffs' Memo, "[p]laintiffs allege that defendant's practice of sending the form collection letter with the processing fee statement would mislead not only the least sophisticated consumer but also the reasonable consumer ... into thinking that defendant was entitled to charge and collect $5.00 credit card payment fees." Plaintiffs' Memo, p. 24. The fact that the $5.00 fee may be "unambiguously disclosed" in a manner which is "clear on its face" is irrelevant to plaintiffs' theory.

Defendant's second argument is persuasive, but not a basis for summary judgment. Defendant has adduced evidence that it "has a policy of ceasing communication with a debtor immediately once MBI is notified that the debtor is represented by counsel." Alpren Affidavit, ¶ 8. While defendant acknowledges sending a letter to Ms. Campbell after receiving the Puglisi Letter, MBI's president states that the letter was "mistakenly sent," and reiterates that "[i]t is MBI's policy to always honor legal representation letters from consumers' counsel." *Id.*, ¶¶ 11. Plasintiffs have not adduced any evidence to the contrary.

Since conduct "unique to the parties" does not "fall within the ambit of the statute," *see Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25, 623 N.Y.S.2d at 532, the undisputed fact that defendant sent the Third Letter is not enough to make out a claim under GBL § 349. However, as noted above, plaintiffs do not rely solely on the theory that defendant communicated directly with represented consumers. Plaintiffs also claim that defendant violated GBL § 349 by sending form collection letters containing the reference to the $5.00 processing

fee. Accordingly, defendant's second argument does not provide a basis for granting summary judgment with respect to the entire fourth cause of action.

The Court declines to address the defendant's argument that the Amended Complaint "lacks any allegations as to how consumers were harmed in any material way by MBI's optional and voluntary credit card Processing Fee Statement." Defendant's Reply, p. 10. That argument is first raised in Defendant's Reply and plaintiffs have not had the opportunity to respond to it. The Court notes, however, that the relevant question is not whether plaintiffs have alleged that "consumers were harmed in any material way" by defendants' deceptive acts or practices, but rather whether plaintiffs can prove that they suffered injury as a result of those acts or practices. *See Crawford*, 758 F.3d at 490.

### CONCLUSION

For the reasons set forth above, plaintiffs' motion to file Exhibit 10 to the Kidd Declaration under seal and defendant's motion to file Exhibit C to the Browne Affirmation under seal are both granted. Plaintiffs' motion for summary judgment is granted with respect to the first and second causes of action, but is otherwise denied. Defendant's motion for summary judgment is granted with respect to the third cause of action, but is otherwise denied. The parties are directed to appear before the Court in Courtroom 4B of the Theodore Roosevelt Courthouse on April 17, 2015, at 10:00 AM to discuss how they wish to proceed with this action.

**SO ORDERED.**

Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: March 31, 2015
     Brooklyn, New York

33